UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GEOFF MCPHERSON and ROSEANN MCPHERSON, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>HOMEWARD RESIDENTIAL, et al.,<br><br>Defendants. | CASE NO. C12-5920 BHS<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR EXTENSION OF TIME AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiffs Geoff and Roseann McPherson's ("McPherson") motion for extension of time to file a response to Defendants' motion for summary judgment (Dkt. 36) and Defendants' motion for summary judgment (Dkt. 31). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file. For the reasons stated herein, the Court hereby grants denies the McPhersons' motion for an extension of time and grants Defendants' motion for summary judgment.

## I. PROCEDURAL HISTORY

On September 26, 2012, the McPhersons filed a complaint in Pierce County Superior Court for the State of Washington. Dkt. 1-2. The McPhersons allege that Defendants have violated the Washington Consumer Protection Act, RCW Chapter

ORDER - 1

19.86; violated the Washington Deed of Trust Act ("DTA"), RCW Chapter 61.24; and committed common law negligence, fraud, and misrepresentation. *Id*.  On October 16, 2012, Defendants removed the matter to this Court.  Dkt. 1.

The McPhersons also sought to enjoin the pending foreclosure sale. After the initial Notice of Postponement, see Declaration of Melanie MacLellan ("MacLellan Decl."), Ex. G, the foreclosure sale was next scheduled for December 14, 2012. Dkt. 16 at 1. On December 12, 2012, the parties stipulated to and the Court entered an injunction postponing this sale through at least March 9, 2013.  Dkt. 16 at 2.  As a condition of the stipulated injunction, the Plaintiffs were required to make monthly deposits of $1,277.00 into the Court Registry. *Id*.  The Trustee's Sale was next scheduled for August 21, 2013. Dkt. 28 at 1-2.  On August 19, 2013, the McPhersons filed a Motion for Emergency Temporary Restraining Order to stop this sale.  Dkt. 29.  On August 21, 2013, Plaintiffs' motion was granted.  Dkt. 30. As a condition of the restraining order, Plaintiffs were required to make monthly deposits of $1,277.00 into the Court Registry.  *Id.* at 3.  The Trustee's Sale has not been rescheduled. Rivera Decl. ¶ 3.

On December 11, 2013, all Defendants moved for summary judgment against the McPhersons on all claims.  Dkt. 31.  The motion for summary judgment was properly noted for consideration on January 3, 2014.  *Id*. and W.D. Local Civil Rule ("LRC") 7(d). The McPhersons' response to the motion was due December 30, 2013.  LRC 7(d).  They did not timely file a response.

On January 4, 2014, the day after Defendants' motion for summary judgment was noted for the Court's consideration, the McPhersons filed a motion for extension of time

to file a response to their motion for summary judgment. Dkt. 36. On January 9, 2014, Defendants filed a response in opposition to the McPhersons' motion for extension of time. Dkt. 37.

On January 17, 2013, Defendant Option One Mortgage ("Option One") was dismissed. Dkt. 21. On January 30, 2014, the Court, by stipulation, dismissed Defendant Fidelity National Title Insurance Company ("Fidelity"). Dkt. 46.

## II. FACTUAL BACKGROUND[1]

**A.   The McPhersons' Loan**

In August 2005, the McPhersons obtained a $295,500 loan to buy a home in Pierce County, Washington from Option One. Compl. ¶¶ 8-10. The McPhersons executed a Deed of Trust securing the loan, which was recorded with the Pierce County Official Recorder on September 7, 2005 as instrument number 200509071317. *Id.* ¶ 10; MacLellan Decl., Ex. A (Deed of Trust).

The Note expressly stated that the McPhersons "understand that Lender may transfer this Note." Declaration of Kyle Lucas ("Lucas Decl."), Ex. A at 1. The Note further explained: "Even if, at a time when [the McPhersons are] in default, the Note Holder does not require [the McPhersons] to pay immediately in full as described [in the Note], the Note Holder will still have the right to do so if [McPhersons are] in default at a later time." *Id.* at 2. Option One endorsed the Note in blank, making it bearer paper. *Id.* at 7.

---

[1] Finding Defendants' statement of facts consistent with the supporting documentation properly in the record, this factual background is largely taken from their statement of facts.

The Deed of Trust securing the Note identified Option One as the "Lender." MacLellan Decl., Ex. A (Deed of Trust) at 1. Like the Note, the Deed of Trust explained:

> The Note or a partial interest in the Note (together with this Security Instrument) *can be sold one or more times without prior notice to Borrower*. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.

*Id*. at 5 (emphasis added). The Deed of Trust empowered the Lender to direct a trustee to initiate foreclosure upon the borrowers' default. *Id*. at 6. The McPhersons initialed each page of (and signed) the Deed of Trust. *See id*.

The McPhersons acknowledge that their loan was sold to U.S. Bank shortly after the loan was originated in 2005. Compl. ¶ 26. U.S. Bank is the current holder of the Note. Lucas Decl., Ex. A (Endorsed Note). All loans in the operative U.S. Bank Pooling and Servicing Agreement were conveyed to U.S. Bank on or before December 1, 2005. MacLellan Decl. ¶ 10 & Ex. I (Pooling and Servicing Agreement). On May 17, 2012, notice of the assignment to U.S. Bank was recorded in the Official Records of Pierce County. Compl. ¶ 25; MacLellan Decl., Ex. B (Assignment of Deed of Trust). Thus, it is uncontroverted that, as of May 17, 2013, U.S. Bank was not only beneficiary as a matter of law (due to its status as Note holder, RCW 61.24.005(2), see Section III(B)), but also beneficiary of record under the Deed of Trust.

**B.    The McPhersons Default and U.S. Bank Initiates Nonjudicial Foreclosure**

The McPhersons' Note defined default as the failure to "pay the full amount of each monthly payment on the date it is due." Lucas Decl., Ex. A at 2. By September 20,

ORDER - 4

1   2011, the McPhersons had defaulted on the loan by failing to make required payments.

2   Compl. ¶ 24; MacLellan Decl., Ex. C (Notice of Default).

3   Due to the McPhersons' default, on September 20, 2011, Defendant Homeward

4   Residential, Inc. ("Homeward"), formerly known as American Home Mortgage

5   Servicing, Inc., sent them a Notice of Default. Compl. ¶ 24; Answer ¶ 2; MacLellan

6   Decl., Ex. C (Notice of Default). The Notice of Default identified U.S. Bank as the

7   beneficiary. *Id.* Following this notice, Homeward and trustee Fidelity, began foreclosure

8   proceedings on behalf of U.S. Bank. *Id.* Specifically, on May 17, 2012, Homeward, on

9   behalf of U.S. Bank, executed and recorded an Appointment of Successor Trustee,

10  appointing Fidelity as the trustee under the Deed of Trust. MacLellan Decl., Ex. D

11  (Appointment of Successor Trustee). This appointment authorized Fidelity to issue a

12  Notice of Trustee's Sale. RCW 61.24.010(2) (successor trustee vested with powers upon

13  recording of appointment); RCW 61.24.040 (trustee must record notice of sale).

14  Because the McPhersons did not cure their default, on June 27, 2012, 281 days

15  after Homeward transmitted the Notice of Default on behalf of U.S. Bank, and 41 days

16  after Homeward recorded the Appointment of Successor Trustee, Fidelity recorded a

17  Notice of Trustee's Sale. MacLellan Decl., Ex. E (Notice of Trustee's Sale); RCW

18  61.24.030(8) (default must be sent at least 30 days before recording sale notice); RCW

19  61.24.040 (trustee must record sale notice). The Notice scheduled the sale for 135 days

20  later, November 9, 2012. MacLellan Decl., Ex. E (Notice of Trustee's Sale); RCW

21  61.24.040(1) (sale must be at least 90 days after recording sale notice). Fidelity also sent

22

1  a Notice of Foreclosure to the McPhersons.  MacLellan Decl., Ex. F (Notice of

2  Foreclosure); RCW 61.24.040(2).

3  After defaulting on the loan, the McPhersons requested a loan modification on

4  July 5, 2012.  Compl. ¶ 26.  The McPhersons claim that Homeward repeatedly told them

5  documents were missing from their application.  Compl. ¶¶ 28, 32.  The McPhersons

6  assert that they had already provided many of the documents requested by Homeward.

7  *Id*. ¶ 32.  Plaintiffs also allege that on August 13, 2012, Homeward told them that the

8  foreclosure sale had been put on hold.  *Id*. ¶ 29.  Indeed, Fidelity later filed a Notice of

9  Postponement of Trustee's Sale.  MacLellan Decl., Ex. G (Notice of Postponement).

10 Following the filing of this litigation, the McPhersons were invited to submit a complete

11 loan modification application package for consideration, as Homeward had indicated to

12 the McPhersons that they had not submitted all necessary documents, including recent

13 bank statements and documents to substantiate rental income.  *See* Declaration of

14 Frederick B. Rivera ("Rivera Decl.") ¶ 2.  However, the McPhersons refused, claiming

15 they had already provided documents supporting their modification request.  *Id.*

16                                             **III. DISCUSSION**

17 **A.     Motion for Extension of Time**

18  In their motion for extension of time to file a response, the McPhersons argue that

19 the response time for filing a response was too short to permit them to file a response.

20 Dkt. 36 at 2.  They also argue that their counsel needed an extension because she had an

21 appellate brief due during the same period she was to write the response to Defendants'

22

motion. *Id*. They also allege that counsel for Defendants acted "unreasonably by not consulting with counsel before scheduling the hearing date for the motion." *Id*. at 3.

First, Defendants' motion for summary judgment was properly noted pursuant to LRC 7(d). Under these rules, they had the same amount of time to file a response as any other party would.

Second, LRC 7(j), Motion for Relief from Deadline, reads in relevant part as follows:

> A motion for relief from a deadline should, whenever possible, be filed sufficiently in advance of the deadline to allow the court to rule on the motion prior to the deadline. Parties should not assume that the motion will be granted and must comply with the existing deadline unless the court orders otherwise.

The McPhersons failed to comply with this local rule by presuming that their motion would be granted and not complying with the existing deadline ordered by the Court. Failure to comply with this rule is alone sufficient to deny the McPhersons' motion for an extension of time to file their response.

Additionally, in the absence of the McPhersons' citation to any legal authority or facts demonstrating "excusable neglect," under Fed. R. Civ. P. 6(b), the Court finds no basis warranting an extension. As Defendants maintain, the reasons the McPhersons provide for requesting an extension do not constitute excusable neglect, nor do the McPhersons make any substantive legal argument that their reasons actually constitute excusable neglect. *See* Dkt. 37 at 5-9 (*citing Pioneer Inv. Services Co. v. Bruswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (articulating four-factor tests to determine whether party has shown excusable neglect)).

In this case, although Plaintiffs eventually filed a response, it was almost a month past the due date. Thus, for purposes of this analysis, the Court is treating their response as if it had not been filed because the Court finds no basis to grant the McPhersons' motion to continue.

**B.     Motion for Summary Judgment**

    **1.     Defendants' Argument**

Defendants argue that the McPhersons filed this lawsuit to stop—or at least delay—the foreclosure. Dkt. 31 at 2. Homeward and U.S. Bank contend that the claims under the Washington Consumer Protection Act, chapter 19.86 RCW ("WCPA") and the DTA, for gross negligence, and for common law fraud or misrepresentation are unfounded. *Id*. As Defendants correctly point out, each claim is premised on one of the following contentions: (1) that U.S. Bank is not the beneficiary entitled to enforce the Note and Deed of Trust; (2) that Homeward filed documents as the beneficiary when it was not; and (3) that Homeward owed the McPhersons an obligation to modify their loan after they defaulted. *Id*. at 2-3.

According to Defendants, each of these premises is legally and/or factually flawed: (1) U.S. Bank, as the holder of the original Note endorsed in "blank," is the beneficiary entitled to enforce the Note and Deed of Trust; (2) at all relevant times Homeward properly acted as, and identified itself as, the agent of U.S. Bank, not as the beneficiary; and (3) Homeward owed no obligation to the McPhersons to modify their loan. *Id*. at 3. Thus, Defendants maintain the McPhersons' claims fail as a matter of law and must be dismissed. *Id*.

### 2. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

A motion for summary judgment should not be granted simply because there is no opposition, even if the failure to oppose violated a local rule. *See Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993). Rather, the moving party must demonstrate the absence of genuine issues of material fact, regardless of whether the party against whom the motion for summary judgment is directed has filed any opposition. *See Cristobal v. Siegel*, 26 F.3d 1488, 1491 (9th Cir. 1994).

**3.     Analysis**

In the instant case, Defendants have demonstrated that no genuine issue of material fact exists. As the facts above indicate, the McPhersons' loan was sold to U.S. Bank before December 1, 2005. The Note and Deed of Trust expressly permitted Option One to transfer the Note and Deed of Trust without prior notice to Plaintiffs. Thus, U.S. Bank had foreclosure rights under the Deed of Trust before Option One executed the assignment of record because U.S. Bank took possession of the Note in 2005 as part of the securitization. MacLellan Decl. ¶ 10 & Ex. I; Lucas Decl., Ex. A (Endorsed Note). This is consistent with Washington law, as the sole purpose of recording assignments of deeds of trust is to provide notice to third parties of the security interest, not to provide notice to the borrower. *Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102, 1109

(W.D. Wash. 2011); *In re United Home Loans*, 71 B.R. at 891 ("Recording of the assignments is for the benefit of third parties.").

U.S. Bank had authority to enforce the Note and Deed of Trust, even absent a recorded assignment from Option One, because U.S. Bank held and holds the Note. RCW 61.24.005(2) (beneficiary is the "holder of the [promissory note] secured by the deed of trust"); RCW 62A.3-205; RCW 62A.3-301 (the holder of the note includes any party who takes possession of the note, endorsed in blank, by transfer). No Washington statute requires parties to record transfers of promissory notes by endorsement to enforce rights under transferred notes. The "assignment of a deed of trust and note is valid between the parties whether or not the assignment is ever recorded." *In re United Home Loans*, 71 B.R. 885, 891 (W.D. Wash. 1987).[2]

As a matter of law, U.S. Bank is the rightful beneficiary under the Deed of Trust and had the right to initiate foreclosure proceedings. Because the McPhersons have based each of their claims on the incorrect theory that U.S. Bank is not the rightful beneficiary, their Complaint should be dismissed.

Further, the McPhersons also argue that Homeward should not have recorded documents with Pierce County because it was not the beneficiary. *See, e.g.*, Compl. ¶¶

---

[2] *See also Pequignot v. Deutsche Bank Nat'l Trust Co.* (*In re Pequingnot*), C09-1688JLR, 2010 WL 3605326, at *3 (W.D. Wash. Sept. 10, 2010) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.") (*quoting* RCW 62A.3- 205(b)), *aff'd*, 485 F. App'x 284 (9th Cir. 2012). Although the Court does not rely on unpublished decisions to support its conclusion, such decisions, when affirmed by the Circuit, may provide the Court assistance in arriving at its own interpretation of the law.

48 (WCPA claim), 59 (DTA claim). However, the relevant Appointment of Successor Trustee expressly states that Homeward recorded this document as the agent of the beneficiary, U.S. Bank, not on its own behalf. *See* MacLellan Decl., Ex. D. The McPhersons do not dispute that this Appointment of Successor Trustee identifies Homeward as the "attorney in fact" of U.S. Bank. *See* Compl. ¶ 17. "Washington law, and the deed of trust act itself, approves of the use of agents." *Bain v. Metropolitan Mortgage Group, Inc.*, 175 Wn.2d 83,106 (2012). Thus, as a matter of law, Homeward's recordings on behalf of U.S. Bank were in accordance with the DTA.

This claim also must fail because the recording of documents did not affect the McPhersons in any way. As noted above, recording of an assignment of a deed of trust does not affect a borrower's rights. *See In re United Home Loans*, 71 B.R. at 891 (W.D. Wash. 1987). Nor did the recording of documents cause the McPhersons to breach their loan agreement by not making payments. As a result, any claim premised on publicly recorded documents must fail.

Further, the McPhersons appear to claim that even if U.S. Bank was the holder of the note, the rightful beneficiary and all transfers completed, assignments made, notices issued, and recordings done were therefore proper, Defendants are still liable for gross negligence due to their failures to modify their loan and engage in good faith negotiations to modify their loan, as they had a duty to do so. Compl. ¶¶ 53-54. Based on the record before the Court, the Defendants were under no obligation to modify the McPhersons' loan and thus had no duty in regard to such negotiations. *See, e.g., Baggett v. Security State Bank*, 116 Wn. 2d 563, 571 (1991) ("While the parties may choose to renegotiate

1 their agreement, they are under no good faith obligation to do so"). Even if Defendants
2 had such an obligation, in this case, the facts indicate that prior to the initiation of this
3 suit, McPhersons did not complete their loan modification packet and were informed of
4 missing documents. After the initiation of the suit, the McPhersons still refused to submit
5 all the documents necessary to complete a loan modification application when Homeward
6 invited them to complete the packet. Thus, given that Defendants have shown that their
7 motion has merit, the Court finds no genuine issue of material fact as to whether
8 Defendants are liable for failure to either modify their loan or engage in negotiations to
9 do so.

## IV. ORDER

Therefore, it is hereby ordered that Plaintiffs' motion to continue (Dkt. 36) is **DENIED**, and Defendants' motion for summary judgment (Dkt. 31) is **GRANTED**. The case is **DISMISSED with prejudice**.

Dated this 4th day of February, 2014.

BENJAMIN H. SETTLE
United States District Judge